420 So.2d 550 (1982)
Paul L. LOEWENWARTER
v.
Henry M. MORRIS, Superintendent of Police, New Orleans Police Department.
No. CA-0180.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1982.
Writ Denied October 21, 1982.
*551 Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Barkley, Jr. and Francis R. White, III, New Orleans, for plaintiff-appellee.
McGlinchey, Stafford, Mintz & Cellini, Thomas P. Anzelmo, Sr., White, Jones & Lombard, Charles H. White, George R. Simno, Deputy City Atty., New Orleans, for defendant-appellant.
Before GARRISON, KLEES and LOBRANO, JJ.
GARRISON, Judge.

I
This is an appeal from a judgment of the district court dismissing defendant's exception of no cause of action and issuing a writ of mandamus as follows:
"... to compel the Defendant to produce for inspection and copying by Plaintiff the following records of the New Orleans Police Department:
"New Orleans Police Department's homicide report on the death of New Orleans Police Officer Gregory Neupert, who died on or about November 8, 1980, together with any attachments or addenda to that report as well as any supplemental reports pertaining to the Police Department's investigation of Officer Neupert's death and any statements obtained in connection therewith and all ballistics, Laboratory or other tests performed in connection therewith."
Plaintiff and defendant presented to the trial court the following joint stipulation of facts:

"1.
"Paul L. Loewenwarter is a person of the full age of majority. He is a producer of CBS 60 Minutes news program, which is broadcast weekly by CBS, a major television network, and carried by CBS and its affiliated television stations throughout the country. CBS News program 60 Minutes has been the mostly widely watched television news broadcast of the last decade and has won numerous awards for journalistic excellence. In each 60 Minutes broadcast, CBS News reports upon several different issues of national or international importance. To produce these broadcasts, CBS News performs in-depth investigation and research.

"2.
"Defendant Henry Morris is Superintendent of Police, New Orleans Police Department (`NOPD'), and as such is the `custodian' of the NOPD's records, within the meaning of the Louisiana Public Records Act, LSA-R.S. 44:1A(3).

"3.
"Pursuant to, and in full compliance with the Louisiana Public Records Act, Loewenwarter requested Morris to allow him to inspect and copy certain NOPD records pertaining to the investigation of the homicide of NOPD Officer Gregory Neupert. Those records were requested because 60 Minutes is investigating the matter for the purpose of broadcasting a news program.

"4.
"Loewenwarter originally made an oral request for the records to NOPD Public Information Officer August Krinke on September 8, 1982. Loewenwarter was told that his request would be considered. Loewenwarter followed up with a written request delivered to Morris on September 10, 1982. A copy of that written request is attached hereto as Exhibit 1.

"5.
"Loewenwarter's September 10, 1982 written request was delivered to Morris on that *552 date with a letter from Loewenwarter's counsel, a copy of which is attached hereto as Exhibit 2.

"6.
"Immediately upon receipt of Loewenwarter's written request of September 10, 1982, Morris turned that request over to the City Attorney's office, with a copy to the District Attorney's office. That same day, John Kastner, Morris' assistant, advised Loewenwarter's counsel of the foregoing and that Morris would be guided by the advice of the City Attorney's office.

"7.
"Loewenwarter's counsel called the attorneys in the City Attorney's office and the District Attorney's office who were handling the matter several times during the week of September 13, 1982 in order to obtain a response to Loewenwarter's request, but those attorneys were unavailable and did not return the calls. Finally, at the end of that week, Loewenwarter's counsel called John Kastner, advised him that he had been unable to contact the attorneys who were handling the matter, and that suit would be filed unless the matter could be resolved.

"8.
"After the call to Kastner, Mr. Thomas Anzelmo of the McGlinchey law firm called Loewenwarter's counsel late in the afternoon on September 16, 1982, advised him that he was handling the matter, and that the records would not be produced because of orders issued in a civil suit pending in federal court. That was confirmed by Mr. Anzelmo in a letter dated September 17, 1982, a copy of which is attached hereto as Exhibit 3.

"9.
"Mr. Anzelmo's telephone call late in the afternoon on September 16, 1982, was the first notice to Loewenwarter or his counsel that the records would not be produced. Mr. Anzelmo's letter of September 17, 1982, was the first and only written response to Loewenwarter's requests until defendant's pleadings were filed herein on September 30, 1982. The sole bases evoked in both the telephone response and the written letter response for refusing Loewenwarter's request were the issuance of the protective order and an oral order staying discovery in the federal civil suit.

"10.
"Neither Loewenwarter nor his counsel were ever advised by anyone, orally or in writing, that the records were not `public records' or that they were within the exemption contained in LSA-R.S. 44:3A(1) of that they would not be produced because of a pending criminal prosecution in federal court or an `ongoing investigation' by the District Attorney's Office until the conference with the Court on September 28, 1982, some twenty days after Loewenwarter's oral request and eighteen days after his written request. Until defendant's pleadings were filed in this case, neither Loewenwarter nor his counsel were ever advised by anyone in writing that such was a basis for refusing to produce the records.

"11.
"None of the records requested by Loewenwarter have been produced to him for his inspection and copying.

"12.
"The records in question do not pertain to any pending state criminal litigation.

"13.
"No one has been prosecuted or charged in any court for the homicide of Officer Neupert, and there are no persons suspected of the murder of Officer Neupert.

"14.
"Proposed charges against New Orleans police officers for the homicides and batteries occurring at Algiers during the investigation of Neupert's death have twice been presented to Orleans Parish special grand juries, but neither grand jury returned an *553 indictment. The first special grand jury, which investigated the matter from December 1, 1980 to May 13, 1981, heard 88 witnesses in 113 appearances, toured both the New Orleans Police Department and Algiers, and viewed physical evidence. That grand jury was presented with twelve proposed indictments, involving charges of second degree murder, aggravated battery and perjury against fourteen possible defendants. District Attorney Harry Connick stated that the grand jury's failure to return an indictment indicated the grand jury has declared that `there is no legal basis for bringing criminal charges' and Mr. Connick expressed his regret that there was not `sufficient evidence to justify criminal prosecutions.'

"15.
"The District Attorney did not institute any criminal prosecutions by filing a bill of information which could have been done without grand jury intervention for the criminal charges of manslaughter, aggravated battery and perjury or any other crime which does not carry a mandatory sentence of death or life imprisonment.

"16.
"After the special grand jury was dismissed in May 1981, without returning an indictment, Mr. Connick stated: `While it is important to point out that these actions are final as of now, this office and the Grand Jury are prepared to reopen the investigation and reexamine allegations of criminal wrongdoing by the police if any new evidence is presented that would warrant such action.' Mr. Connick would reopen any case, not just the Algiers case, if presented with new evidence which would warrant reexamining allegations of criminal violations.

"17.
"After the first special grand jury refused to return an indictment, Mr. Connick stated:
`(E)very conceivable human effort was expended by the Orleans Parish Special Grand Jury and by the members of my staff who worked on the case to determine the truth and to see that justice prevailed.'

"18.
"The first special grand jury returned no true bills as to everyone except one police officer as to whom the grand jury pretermitted. After the first special grand jury was dismissed and Mr. Connick's statements were made as set forth above, a second special grand jury was convened and reopened the investigation and reexamined allegations of criminal wrongdoing by one police officer. That special grand jury met from June 1981 to June 1982, and did not return an indictment. The case is not under active investigation by the District Attorney's Office or the state grand jury at the present time. However, the District Attorney's Office would reopen the case if presented with new evidence which would warrant reexamining allegations of criminal violations. The District Attorney's Office would do that in any case, not just this case.

"19.
"There is presently pending in federal court in New Orleans a criminal prosecution against seven members of the New Orleans Police Department for allegedly violating the civil rights of four persons (none of whom was Neupert) by beating them. Specifically, the federal prosecution is based upon federal statutes, 18 U.S.C. §§ 2, 241 and 242. The indictment in that case was filed on July 9, 1981. The indictment was dismissed by the district court and later reinstated by the 5th Circuit Court of Appeals, and a writ application is currently pending before the U. S. Supreme Court. No one is charged in the federal criminal prosecution with the homicide of Officer Neupert or anyone else. Neither of the parties to this action is a party in the federal criminal litigation.

"20.
"There is also presently pending in federal court in New Orleans the suit of Byrd v. *554 Parsons, Civil Action No. 81-406, which is a civil action for damages brought pursuant to the Federal Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, against the City of New Orleans, the mayor and various members of the NOPD for allegedly violating plaintiff's civil rights after the death of Officer Neupert. It is consolidated with several other similar suits. Neither Paul Loewenwarter nor Henry Morris is a party to that suit.

"21.
"The plaintiff in Byrd filed a motion to compel defendants to produce various documents, including NOPD records. The magistrate granted the motion and ordered the defendants to produce the various documents requested. In granting the motion, however, the magistrate, on only an oral request by defendants' counsel made at the time the motion to compel was considered, issued a protective order ordering the plaintiffs and their attorneys, agents, etc., to limit their use of the materials to the lawsuit, and ordered the plaintiffs and their attorneys, agents, etc., not to disclose the materials to anyone except those employed in connection with the lawsuit. The plaintiffs appealed the issuance of the protective order to the judge. The judge did not affirm the protective order but rather, the judge referred the plaintiffs back to the magistrate. The plaintiffs have not applied to the magistrate for further relief from the protective order. A copy of the protective order is attached as Exhibit 4.

"22.
"The protective order, by its terms, is directed only to the plaintiff, and not the defendants, in Byrd v. Parsons.

"23.
"The United States, which is not a party to the federal civil suit, Byrd v. Parsons, filed a motion to stay discovery in that civil suit. That motion was heard on September 1, 1982, and after the conclusion of argument, the federal court orally ordered the parties to the civil suit to stay formal discovery in the civil suit. The oral stay order was not directed to anyone other than the parties to the federal civil suit. No written order staying discovery in the civil suit was issued.

"24.
"While both parties hereto stipulate to the existence of the foregoing facts, for purposes of this litigation only, the parties do not agree that all of the foregoing stipulated facts are relevant and each of the parties hereto reserves his right to object to the relevancy of any of the foregoing stipulated facts."

II
R.S. 44:1 provides as follows:
"A. (1) As used in this Chapter, the phrase `public body' means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function.
"(2) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the constitution of laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the *555 constitution of the laws of this state, are `public records,' except as otherwise provided in this Chapter or as otherwise specifically provided by law.
"(3) As used in this Chapter, the word `custodian' means the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records." (emphasis supplied)
Additionally, R.S. 44:3 provides:
"A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety, marshals, investigators, correctional agencies, or intelligence agencies of the state, which records are:
"(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or ...." (emphasis supplied)
In the instant appeal, defendants argue that the records requested pertain to pending litigation citing a protective order in the federal suit of Byrd v. Parsons. Byrd v. Parsons is a federal civil suit for damages under 42 U.S.C. § 1983. Additionally, there are two civil suits for damages pending in Civil District Court.[1] The case of U. S. v. McKenzie is a federal criminal prosecution which is pending. Each case is examined separately below.

A. Byrd v. Parsons

In Byrd the magistrate issued the following protective order:
"Considering the Defendant's Request for Protective Order made during the conference in Chambers on July 28, 1982:
"IT IS ORDERED that the plaintiffs, their attorneys, experts, agents, and any firms, corporations and/or individuals who are employed in connection with this litigation be and they are hereby ordered to limit their use of the photographs, police reports, diagrams of the scene, statements of police officers, statements of witnesses taken by police officers, taped recordings of police officers and/or witnesses made by the police department, and any other document, recording, report, tests results, gun, pellet, cartridge, shell, and all physical evidence and things given to the plaintiffs by defendants pursuant to a Request for Production or made available to plaintiffs in connection with this litigation, to the need for the preparation of the trial and trial of these cases only.
"IT IS FURTHER ORDERED that the plaintiffs, and the parties referred to above are specifically ordered not to disclose any document or portions thereof, or any of the things referred to above to any Reporter or employee for the news media or to any other person, firm, or corporation who is not employed for the sole purpose of assisting in the preparation for the trial of these cases, or for use outside of this litigation." (emphasis supplied)
As seen from the above copy of the order (1) the order is binding only on the plaintiffs, not on the defendants, and (2) Byrd is a civil case. The statute only exempts criminal litigation.

B. The Civil District Court Cases
Both of the Civil District Court suits are civil suits not specifically exempted under R.S. 44:3. Consequently, the material is public record relative to these two cases.

C. U. S. v. McKenzie

The Federal Grand Jury indicted several police officers on charges of criminal violations relative to the popularly called "Algiers Shooting" incident. On September 10, 1981 the U. S. District Court for the Eastern District dismissed all of the indictments *556 against the 7 officers. On June 18, 1982, 678 F.2d 571, the Fifth Circuit Court reinstated the indictments. Apparently writs have been taken to the U. S. Supreme Court.
The Louisiana Public Records law specifically provides for and is binding upon the State and its subdivisions. See R.S. 44:1 quoted above.
Appellants argue that the exemptions contained in R.S. 44:3 for "pending criminal litigation" means "pending federal criminal litigation" as well as state criminal litigation. The trial judge found that "criminal litigation" meant State criminal litigation exclusively:
"For the record, the joint stipulations of fact recite in part, recites in part in paragraph 18 the following:
"`The case is not under investigation by the District Attorney's office or the State Grand Jury at the present time. It is possible, as the stipulation recites that the District Attorney's office would reopen the case if presented with new evidence which would warrant re-examining allegations of criminal violation.'
"But the statute mandates pending criminal litigation or reasonable anticipation of criminal litigation and such is not the case herein. In view of the fact that the Public Records Act is a state statute enacted by the state legislature applicable to officers and agencies of the State and in view of the fact that the exemptions to the Public Records Act LSA-R.S. 44:3 are to be construed strictly, the Court is of the opinion that the records herein requested do not meet the standards enumerated in LSA:R.S. 43:31A (sic) in that the criminal litigation referred to therein refers to and is applicable to litigation proceedings in State Court." (Tr. p. 16)
As pointed out in defendant-appellant's brief, the Act must be limited to the jurisdiction of the Louisiana State Legislature. The Louisiana Legislature cannot pass laws for the State of Georgia. Likewise, the Louisiana Legislature cannot pass Federal laws. The legislature does not have the power to enact the Federal Rules of Criminal Procedure as that power is vested in the Congress. Accordingly, the trial judge is correct in his contention that the statute can only apply to State criminal litigation.
As to the issue of attorney's fees, the trial judge pretermitted the issue. (Tr. p. 16) R.S. 44:35 provides as follows:
"A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney's fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
"B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.
"C. Any suit brought in any court of original jurisdiction to enforce the provisions of this Chapter shall be tried by preference and in a summary manner. Any appellate courts to which the suit is brought shall place it on its preferential docket and shall hear it without delay, rendering a decision as soon as practicable.
"D. If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be *557 awarded reasonable attorney's fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney's fees or an appropriate portion thereof.
"E. If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. The custodian shall be personally liable for the payment of any such damages, and shall be liable in solido with the public body for the payment of the requester's attorney's fees and other costs of litigation, except where the custodian has withheld or denied production of the requested record or records on advice of the legal counsel representing the public body in which the office of such custodian is located, and in the event the custodian retains private legal counsel for his defense or for bringing suit against the requester in connection with the request for records, the court may award attorney's fees to the custodian." (emphasis supplied)
Finally, to grant any stay sought by the defendantsor to permit any further delay in the production of the records sought by the plaintiffwould violate the freedom of speech and press guaranteed to the plaintiff and his employer by the First and Fourteenth Amendments to the U. S. Constitution. Therefore,
IT IS ORDERED that the judgment of the court below is hereby affirmed. The case is remanded for further proceedings consistent with this decree and for the awarding of attorney's fees.
AFFIRMED.
KLEES and LOBRANO, JJ., concur with written reasons.
KLEES, Judge concurring with written reasons.
The record convincingly shows that this matter is not under active state investigation by the District Attorney's Office or by a State Grand Jury. Furthermore, there has been no affirmative showing by the appellant of a direct use by Federal Authorities of the records sought. Absent such evidence, I conclude along with my learned brothers that the records sought are public records under R.S. 44:1, et seq. and the judgment of the trial court should be affirmed.
LOBRANO, Judge, concurring with written reasons.
I concur with the holding that appellee is entitled to the requested police records but do not agree with the interpretation of the "pending criminal litigation" exemption of La.R.S. 44:3A(1). The majority holds that "pending criminal litigation" refers only to state criminal litigation. Although the exemptions in a "public records statute" should be read narrowly, to hold that "pending criminal litigation" excludes federal criminal prosecution would be in error. The inevitable result of such a holding would be that a federal defendant would be able to obtain state investigative reports which may be a vital part of the federal prosecution in those instances where local law enforcement agencies often initiate investigations leading to federal criminal prosecution.
In the instant case the record reveals no showing that the documents sought pertain to the pending Federal criminal litigation which defendant seeks to use as an exemption. Therefore I conclude they are public records, and agree that the trial judge's order should be maintained.
NOTES
[1] Raymond Hughes, et al. v. Parsons, et al., CDC # 80-17753; Carol Savant, et al. v. City of New Orleans, et al, CDC # 81-17890.