925 So.2d 17 (2005)
John HILL; Gannett River States Publishing Corporation, d/b/a the Times of Shreveport; the News Star, Monroe; the Daily Advertiser, Lafayette; the Town Talk, Alexandria; and the Opelousas Daily World; and the Louisiana Press Association
v.
EAST BATON ROUGE PARISH DEPARTMENT OF EMERGENCY MEDICAL SERVICES, East Baton Rouge Parish Communications District and Pam Porter.
No. 2005 CA 1236.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*18 Brady D. King, II, A. Jill Futch, Monroe, Counsel for Plaintiffs/Appellants John Hill, et al.
Irys L. Allgood, Special Assistant Parish Attorney, Henry D.H. Olinde, Jr., Scott E. Mercer, Baton Rouge, Counsel for Defendants/Appellees East Baton Rouge Parish, Department of Emergency Medical Services, et al.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this appeal, plaintiffs seek reversal of the trial court's judgment denying their request for issuance of a writ of mandamus based on the court's determination that the 911 tapes for which they submitted a public records request pursuant to Louisiana Public Records Law, La. R.S. 44:1-43 is protected from disclosure based on federal law protections covering private health information and the privacy afforded under the state and federal constitutions.

*19 FACTS AND PROCEDURAL HISTORY
On February 21, 2005, John Hill, a correspondent with the Gannett newspaper chain, submitted a request to the Department of Emergency Medical Services (EMS) "to listen to the 911 call or calls made that resulted in EMS going to the home of Secretary of State Fox McKeithen. . . on Thursday, Feb. 17, 2005."[1] Mr. Hill received a letter dated February 25, 2005, from William Weatherford, Assistant Parish Attorney, notifying him that his request was denied. In the letter, Mr. Weatherford stated that the department was unable to grant Mr. Hill's request for the following reasons:
Under the Health Insurance Portability and Accountability Act (HIPAA) of 1996, the Privacy Rule of this Act became effective 2001 (revised in August 2002) with a compliance deadline of April 14, 2003. The City of Baton Rouge/Parish of East Baton Rouge EMS of which the dispatch service (911) and ambulance service is a part is a "Covered Entity" and are not allowed to release "Protected Health Information" (PHI) unless released by the individual whose health information is protected. The 911 recording, which contains PHI, and all related documents contain PHI and cannot be released.
Before HIPAA was enacted this information was considered public record to some extent. However, HIPAA preempts La. R.S. 44:1 et seq. Therefore, we are bound in this instance by the federal statute.
As a result of the denial of his request, Mr. Hill, the Gannett River States Publishing Corporation, doing business as several newspapers throughout Louisiana, and the Louisiana Press Association (collectively "plaintiffs") filed a petition for the issuance of a writ of mandamus directing EMS and the East Baton Rouge Parish Communications District (Communications District) through their custodian of records, Pam Porter (collectively "defendants"), to produce the requested 911 tapes for inspection or to show cause why the 911 tapes should not be produced for inspection.
In answer to plaintiffs' petition, defendants filed a peremptory exception raising the objection of no cause of action in which they asserted the allegations of plaintiffs' petition did not support a claim for damages under La. R.S. 44:1-43. They also filed a memorandum in opposition to plaintiffs' petition in which they alleged that HIPAA and general privacy laws barred disclosure of the requested 911 tapes.
A hearing in this matter was held on April 18, 2005, during which plaintiffs consented to the dismissal of their claim for damages, leaving before the trial court only the issue of whether HIPAA and/or general privacy laws prohibited the inspection of the 911 tapes. After hearing the arguments of counsel and reviewing the evidence submitted, including an in-camera inspection of the 911 tapes at issue, the trial court found the 911 tapes contain protected health care information that was not subject to disclosure without the permission of the individual to whom the information pertained. The trial court signed a judgment on April 22, 2005, denying *20 plaintiffs' petition for the issuance of a writ of mandamus. It is from this judgment that plaintiffs now appeal.

DISCUSSION

Louisiana Public Records Law
Plaintiffs argue on appeal that the trial court erred in denying Mr. Hill's public records request made pursuant to La. R.S. 44:1-43 because defendants did not carry their burden of establishing that there was a valid exception/exemption to their request under state law. Article 12, Section 3 of the Louisiana Constitution provides "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." Louisiana Revised Statutes 44:31(B) further states:
(1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian. (Emphasis added.)
It is undisputed that the Communications District is a public body and the 911 tapes being public records. The contention lies in whether there is an exception/exemption provided by law that would prevent inspection and production of the items requested. As set forth in La. R.S. 44:4.1, there are numerous exceptions, exemptions, and limitations to the laws pertaining to public records. Included in the list of exceptions is a reference to La. R.S. 13:3734, a statute entitled "Privileged communications between a health care provider and a patient." La. R.S. 44:4.1(B)(5). Louisiana Revised Statutes 13:3734(B) provides that in civil proceedings, "testimonial privileges, exceptions, and waiver with respect to communications between health care provider and his patient are governed by the Louisiana Code of Evidence." In turn, the Louisiana Code of Evidence sets forth the general rule of privilege:
In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
La.Code Evid. art. 510(B)(1).
"Health care provider" is defined, in pertinent part, as "a hospital ..., person, corporation, facility, or institution licensed by the state to provide health care or professional services ... and an officer, employee, or agent thereof acting in the course and scope of his employment." La. R.S. 13:3734(A)(1); La.Code Evid. art. 510(A)(2). However, this definition is broadened by the Louisiana Code of Evidence to include "persons reasonably believed to be such by the patient or his representative." La.Code Evid. art. 510(A)(7). Moreover, it is further made clear that the health care provider has authority to claim the privilege on behalf of a patient or deceased patient. La.Code Evid. art. 510(D).
The Louisiana Code of Evidence broadly defines confidential communication as follows:
(8)(a) "Confidential communication" is the transmittal or acquisition of information *21 not intended to be disclosed to persons other than:
(i) A health care provider and a representative of a health care provider.
(ii) Those reasonably necessary for the transmission of the communication.
(iii) Persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist.
(iv) A patient's health care insurer, including any entity that provides indemnification to a patient.
(v) When special circumstances warrant, those who are present at the behest of the patient, physician, or psychotherapist and are reasonably necessary to facilitate the communication.
(b) "Confidential communication" includes any information, substance, or tangible object, obtained incidental to the communication process and any opinion formed as a result of the consultation, examination, or interview and also includes medical and hospital records made by health care providers and their representatives.
La.Code Evid. art. 510(A)(emphasis added).
Applying the above principles of law to the instant case, we conclude that the 911 tapes at issue qualify as a confidential communication. It is reasonable to believe that a person who calls 911 to request medical assistance would expect that any information transmitted through the call would be considered privileged material that would not be subject to inspection or production under the Louisiana Public Records Law. As correctly noted by defendants on appeal, "Those who call 911 must be confident that they can provide honest and candid medical information to 911 dispatchers without fear of embarrassment or reprisal due to public disclosure." Compare Sarphie v. Rowe, 618 So.2d 905, 908 (La.App. 1 Cir.), writ denied, 620 So.2d 1324 (La.1993) (holding that "when an individual walks into a doctor's office and opens his mouth, that everything spilling out of it, whether it be his identity or his false teeth ..., is presumptively privileged and beyond the reach of discovery"). See also, In re Commitment of W.C., 96-0777, p. 6 (La.App. 1 Cir. 12/20/96), 685 So.2d 634, 638 (noting that the holding of Sarphie "was based upon the underlying concept of protecting the communication process between doctor and patient"). Thus, we find no error by the trial court in denying plaintiffs' petition for the issuance of a writ of mandamus. However, our inquiry does not end here. We turn now to a discussion of whether HIPAA would also apply to the instant case to prohibit disclosure of the 911 tapes at issue.

Application of HIPAA
Sections 261 through 264 of HIPAA and 42 U.S.C. § 1320d-2 authorize the secretary of the United States Department of Health and Human Services (HHS) to promulgate final regulations implementing the requirements of HIPAA. Among the regulations promulgated are those establishing national standards for the privacy of individually identifiable health information, referred to generally as the "Privacy Rule." 45 C.F.R. part 164, subpart E.
The Privacy Rule applies to covered entities with respect to protected health information.[2] 45 C.F.R. § 164.500(a). A *22 covered entity is defined in the regulations as (1) a health plan;[3] (2) a health care clearinghouse;[4] or (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA.[5] 45 C.F.R. § 160.103.
Clearly, the Communications District is not a health plan or health care clearinghouse, so our discussion is limited to whether the Communications District is subject to HIPAA (i.e., is a covered entity) as a health care provider under 45 C.F.R. § 160.103. That regulation generally defines a health care provider as a person or organization who furnishes, bills, or is paid for health care in the normal course of business or is a provider of services as defined in 42 U.S.C. § 1395x(u) or a provider of medical or health services as defined in 42 U.S.C. § 1395x(s). Further complicating this matter is the classification of the Communications District: whether it is simply a subdivision of EMS or whether it is a separate, autonomous department of the State.
Pamela Porter Brunosky, the administrator of EMS, testified that EMS is composed of several divisions and subdivisions, including a separate Communications Division that is further divided into the East Baton Rouge Communications District and the Telecommunications subdivision. She stated that the mission of the Communications District is to function as a 911 call center, oversee upgrades and installation of the communications network, and to work with telephone carriers. She acknowledged that 911 phone calls are not solely for ambulance services, but could be related to requests for the local police and fire departments and that answering 911 phone calls is not the only function of the Communications District.
Notwithstanding this testimony by Mrs. Brunosky, pursuant to legislative authority, the Metropolitan Council of the Parish of East Baton Rouge and the City of Baton Rouge (City-Parish) created the Communications District by Ordinance No. 8148 on May 14, 1986. See La. R.S. 33:9101. According to La. R.S. 33:9101(A)(3), any district created in accordance *23 with the statutory scheme allowing for the creation of communications districts "shall be a political and legal subdivision of the state, with power to sue and be sued in its corporate name and to incur debt and issue bonds." Hence, under the law, the Communications District is a separate and autonomous legal entity, not just a mere subdivision of EMS or division of the City-Parish.[6]
Furthermore, we recognize that based on the evidence presented, especially the testimony of Mrs. Brunosky, the Communications District could be deemed a health care provider in the sense that it is an "organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. § 160.103. Mrs. Brunosky explained that some of the services EMS provides are treatment and transportation and that residents access EMS through calling 911. Employees who answer 911 phone calls are communications officers. She stated that in addition to answering 911 phone calls, the communications officers dispatch EMS ambulances and give medical advice, but she clarified that the communications officers do not dispatch police or fire department assistance. She explained that when communications officers receive medical or health-related 911 phone calls, they try to determine the chief complaint of the patient, which she stated is not always the actual caller. And then using a medical priority dispatch system card file, they select a card related to the patient's complaints and ask a series of questions to determine the appropriate response. Mrs. Brunosky said all communications officers must be qualified at least as a basic emergency medical technician (EMT).
Mrs. Brunosky's uncontradicted and unrefuted testimony establishes that the duties of the communications officers include making initial medical assessments and giving medical advice in the normal course of business. As she explained, for those callers who have a medical or health care emergency, the communications officers utilize the medical priority dispatch system and medical protocols established by the EMS protocol committee under the direction of the EMS medical director, an emergency medicine physician, to assess the need. Further, as EMTs, the communications officers are clearly medical professionals, not just mere phone operators. Since calling 911 is the only way for East Baton Rouge Parish residents to access EMS, it is not inconceivable for a person to expect that some of the phone calls received will be related to health care matters. Based on this unrefuted testimony, we find that the Communications District qualifies as a health care provider under 45 C.F.R. § 160.103 and that the information sought by plaintiffs is health information that is protected from disclosure by HIPAA.

CONCLUSION
Considering the applicable principles of state and federal statutory law, and after having thoroughly reviewed all of the evidence in this matter, we affirm the judgment of the trial court holding that the 911 tapes for which plaintiffs made a public records request pursuant to La. R.S. 44:1-43 are not subject to inspection and denying plaintiffs' petition for the issuance of a writ of mandamus. All costs associated with this appeal are assessed against plaintiffs.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
*24 GUIDRY, J., dissenting.
I disagree with the majority's determination that the provisions of La. R.S. 13:3734 and La. C.E. art. 510 apply in this instance to shield from disclosure the 911 tapes requested by Mr. Hill pursuant to Louisiana Public Records Law, La. R.S. 44:1, et seq.
I do not believe the defendants met their burden of proving that they have the right to invoke the patient-health care provider privilege under the facts of this case. Specifically, the record is clear that the patient did not communicate anything himself in the 911 calls and there was no showing in the record before us that the 911 calls in question were made by his representative as defined in La. R.S. 13:3734(A)(4). Further, I disagree with and find no basis in the record for the majority's conclusion that the persons on the 911 tapes reasonably believed that they were talking to a health care provider, as defined in La. R.S. 13:3734(A)(1). This is not a case where somebody walked into or was brought into a doctor's office or a hospital for treatment. They called for an ambulance to transport the patient. The communications captured on the 911 tapes were not made for the purpose of enabling a health care provider to diagnose, treat, prescribe or act on behalf of the patient; rather a review of the communications in this case show they were made for the purpose of arranging transportation. See La. R.S. 13:3734(A)(5); La. C.E. art. 510(A)(5); Laburre v. East Jefferson General Hospital, 555 So.2d 1381, 1384 (La.1990).
It is well-settled that the public's right of access to public records is a fundamental right guaranteed by both the Louisiana Constitution and the Public Records Law. Times Picayune Publishing Corporation v. Board of Supervisors of Louisiana State University, 02-2551, p. 6 (La.App. 1st Cir.5/9/03), 845 So.2d 599, 605, writ denied, 03-1589 (La.9/5/03), 852 So.2d 1044. Access may be denied only when the law specifically and unequivocally denies access. Williams Law Firm v. Board of Supervisors of Louisiana State University, 03-0079, p. 5 (La.App. 1st Cir.4/2/04), 878 So.2d 557, 562. The Act should be construed liberally, and any doubt must be resolved in favor of the right of access. Angelo Iafrate Construction, L.L.C. v. State ex rel. Department of Transportation and Development, 03-0892, p. 4 (La. App. 1st Cir.5/14/04), 879 So.2d 250, 254, writ denied, 04-1442 (La.9/24/04), 882 So.2d 1131. Thus, exemptions to the Public Records Act should be strictly construed. See Loewenwarter v. Morris, 420 So.2d 550, 556 (La.App. 4th Cir.), writ denied, 421 So.2d 252 (La.1982). In this case, where there is no showing that the parties making the calls are covered by the definition of representative and where: (1) the callers do not reasonably believe that they are a calling a health care provider; and (2) the call is for transportation and there is no showing that the communication was for medical advice, diagnosis, or treatment, I believe the majority errs in finding that the statutes governing privileges form an exception to the Public Records Law.
Nor do I believe in this day and age that the majority is correct that a caller to 911 reasonably believes that information communicated via such a call will not be subject to public disclosure. We live in a society in which it is generally known that when an individual makes 911 calls for help to public agencies those calls are recorded. Further, written transcripts of 911 calls are widely published in the print media and audio copies of the actual calls are often replayed verbatim for the benefit of television and radio audiences. Therefore, generally, it is not reasonable to expect *25 that a taped 911 phone call will be kept private.
I also disagree with the majority's determination that the provisions of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 apply to shield the 911 tapes from disclosure. Although I agree with the majority's finding that the Communications District qualifies as a health care provider under the HIPAA regulations, the provisions of HIPAA are only applicable to covered entities. As defined in 45 C.F.R. § 160.103, the Communications District does not qualify as covered entity. A covered entity is defined in pertinent part in 45 C.F.R. § 160.103 as a "health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA." (Emphasis added.) There is no evidence that the Communications District "transmits any health information in electronic form in connection with a transaction covered by HIPAA." A "transaction" is expressly defined in 45 C.F.R. § 160.103 as "the transmission of information between two parties to carry out financial or administrative activities related to health care."
While EMS bills for the services it provides, the Communications District, as a separate entity from EMS, is funded through a telephone surcharge assessed to all telephone subscribers in East Baton Rouge Parish and there is no indication in the record that the Communications District provides any administrative activities related to health care, such as referral certification and authorization. Hence, as the Communications District fails to qualify as a "health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA," I believe the majority errs in endorsing the trial court's conclusion that the Communications District is subject to HIPAA regulations and thus prohibited from disclosing the information sought pursuant to Mr. Hill's request on that basis. I, therefore, respectfully dissent from the majority opinion rendered in this matter for the reasons expressed herein.
NOTES
[1] While this court takes judicial notice of the death of former Secretary of State Walter "Fox" McKeithen on July 16, 2005, we find that the subject appeal is still a justiciable controversy because, as discussed herein, under certain circumstances, others have been able to assert a right to privacy regarding information about the deceased. See La.Code Evid. art. 201 and Five N Company, L.L.C. v. Stewart, XXXX-XXXX, p. 11 (La.App. 1 Cir. 7/2/03), 850 So.2d 51, 58.
[2] Health information and protected health information are given the following specified meanings under 45 C.F.R. § 160.103:

Health information means any information, whether oral or recorded in any form or medium, that:
(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.
....
Protected health information means individually identifiable health information:
(1) Except as provided in paragraph (2) of this definition, that is:
(i) Transmitted by electronic media;
(ii) Maintained in electronic media; or
(iii) Transmitted or maintained in any other form or medium.
(2) Protected health information excludes individually identifiable health information in:
(i) Education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. 1232g;
(ii) Records described at 20 U.S.C. 1232g(a)(4)(B)(iv); and
(iii) Employment records held by a covered entity in its role as employer.
[3] A health plan is generally defined as an individual or group plan that provides or pays the cost of medical care. See 45 C.F.R. § 160.103.
[4] A health care clearinghouse generally means a public or private entity that processes or facilitates the processing of health information received from another entity. See 45 C.F.R. § 160.103.
[5] HIPAA expressly provides that a covered entity must comply with the Privacy Rule with respect to the protected health information of a deceased individual. 45 C.F.R. § 164.502(f).
[6] In the "Department of Emergency Medical Services Privacy Manual" submitted into evidence by the defendants, the City-Parish declared itself a "hybrid entity" as defined in 45 C.F.R. § 164.504(c)(3)(iii) and designated EMS as a health care component.